IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| PHILLIP DWAYNE AARON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:22-cv-65-RAH-CWB |
| ) | [WO] |
| JOSEPH HEADLEY, et al., ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

In this 42 U.S.C. § 1983 action, Plaintiff Phillip Dwayne Aaron, a former inmate at Staton Correctional Facility (Staton), complains that he was subjected to excessive force in violation of the Eighth Amendment to the United States Constitution. In his First Amended Complaint, Aaron names as defendants Joseph Headley, a warden at Staton, and Officers Henry Guice, David Wingrove, and Claude Hildreth, correctional officers assigned to Staton at the time of the alleged incident.

Pending before the Court is the Motion to Dismiss (Doc. 33) filed by Headley. Aaron has filed a response (Doc. 39) and Headley has filed a reply brief (Doc. 40). This matter is ripe for review.

## II.   STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8 of the Federal Rules of Civil Procedure, which requires: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. But if the facts in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief,'" and the complaint must be dismissed. *Id.* (alteration adopted) (citing Fed. R. Civ. P. 8(a)(2)).

## III. FACTUAL ALLEGATIONS

Construing the well-pleaded factual allegations in the First Amended Complaint as true, as the Court must at this procedural stage, the facts giving rise to this lawsuit are as follows:

**A. Aaron's Alleged Assault by Officer Guice**

On or about March 17, 2019, while incarcerated at Staton, Aaron entered the wrong dormitory and was chased out by Officer Guice. Aaron ran to his correct dormitory, but was denied entry by Officers Wingrove and Hildreth, who stated they "did not want to get involved." (Doc. 22 at 7.) Officer Guice requested Aaron's identification and then walked away. Upon returning, and "without provocation," Officer Guice physically attacked Aaron by jumping on his back and punching him repeatedly. (Doc 22 at 7.) Officer Guice then pushed Aaron to the ground and continued beating him. Officers Wingrove and Hildreth witnessed this altercation but "failed and/or refused to intervene or to prevent the beating from happening altogether" even though Aaron was bleeding from the head. (Doc. 22 at 7.)

Aaron sustained multiple injuries from the assault including, but not limited to, a broken wrist, numerous contusions, and mental and emotional injuries. As a result, Aaron underwent surgery to have pins installed in his right wrist and received stitches to close a laceration to his head.

Although Aaron reported the incident to the appropriate authorities, Aaron alleges there was no investigation into the incident or disciplinary actions taken against Officers Guice, Wingrove, and Hildreth. Aaron further alleges that this incident was the direct result of Warden Headley's failure to take reasonable measures to prevent officer attacks against inmates, amounting to a custom or policy tolerating officer-on-inmate violence.

### B. Documented Uses of Force by Corrections Officers Against Inmates at Staton

Aaron's First Amended Complaint also pleads factual allegations regarding other alleged incidents of officer-on-inmate violence at Staton.

In 2013, the Equal Justice Initiative (EJI) conducted an investigation and filed a complaint with the Department of Justice (DOJ) in which it detailed a pattern of prison staff engaging in excessive physical violence against inmates at Staton. The EJI conducted another investigation in 2018, the results of which revealed the pattern of violence and officer-on-inmate assaults at Staton had become worse and that between 2016 and 2018 violence at Staton was 20.5 times the national average. And in November 2017, an inmate was beaten to death.

In December 2020, the DOJ filed a Civil Rights of Individualized Persons Act claim against the Alabama Department of Corrections (ADOC) in part due to a claimed pattern of excessive force inflicted upon inmates by corrections officers at

ADOC correctional facilities, including Staton. A July 23, 2020 DOJ investigative report followed, confirming "a longstanding pattern and practice of corrections officers using excessive force against prisoners at Staton and other ADOC correctional facilities." (Doc. 22 at 4.) According to the First Amended Complaint, there were three specific incidents that occurred Staton in 2018 cited in the DOJ report where internal investigations concluded that corrections officers used unnecessary force against inmates, yet the officers were not disciplined by the ADOC.

Since 2017, there have been at least six criminal indictments filed against Staton corrections officers for inmate abuse.

### C. Aaron's Claims

Aaron's First Amended Complaint asserts claims against the Defendants in their individual capacities pursuant to 42 U.S.C. § 1983 alleging violations of his Eighth Amendment rights. Count I asserts a supervisory liability claim against Headley for his failure to prevent excessive force by corrections officers at Staton. Headley has moved to dismiss Count I for failure to state a claim.

## IV.  DISCUSSION

In Count I, Aaron asserts a supervisory liability claim against Headley on the basis that Headley "failed to take any corrective measures or punitive actions against corrections officers who violated prisoners' rights," which amounts to a custom or

5

policy of "tolerance of this pattern or practice." (Doc. 22 at 10.) Although written policy requires a warden or captain to conduct an initial investigation whenever the use of force occurs within an Alabama prison, Aaron alleges that Headley implemented an actual custom or policy "to refrain from making a report." (Doc. 22 at 11.) Aaron argues this unofficial custom or policy directly caused the "cruel and unusual punishment inflicted on Aaron and others." (*Id.*)

Headley moves to dismiss this claim on the grounds that (1) Aaron fails to allege a plausible individual capacity claim against him under § 1983; (2) Aaron fails to allege a plausible claim for supervisory liability; and (3) Headley is protected by qualified immunity. Based on the facts pleaded in the First Amended Complaint, the Court agrees with Headley that Aaron fails to allege a plausible claim against Headley.[1]

It is well established under Eleventh Circuit precedent that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation omitted); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). "Plaintiffs must instead allege that

---

[1] Because the Court finds that Aaron has failed to state a plausible claim against Headley, the Court will not also analyze whether Headley is entitled to qualified immunity.

the supervisor, through his own actions, violated the Constitution." *Ingram v. Kubik*, 30 F.4th 1241, 1254 (11th Cir. 2022), *cert. dismissed,* 142 S. Ct. 2855 (2022).

Because Aaron does not allege that Warden Headley was present or personally involved in the alleged assault, Headley is liable under § 1983 only if "there is a causal connection between [his] actions . . . and the alleged constitutional deprivation." *Ingram*, 30 F.4th at 1254 (quoting *Hartley*, 193 F.3d at 1269); *see also Cottone*, 326 F.3d at 1360. Causation for supervisory liability can be established "where the supervisor's improper custom or policy results in deliberate indifference to constitutional rights." *Ingram*, 30 F.4th at 1254. "A plaintiff can also show that the *absence* of a policy led to a violation of constitutional rights." *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 957 (11th Cir. 2019). "Either way, though, to prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents, or multiple reports of prior misconduct by a particular employee." *Ingram*, 30 F.4th at 1254 (quoting *Piazza*, 923 F.3d at 957). "And allegations of a single incident of unconstitutional conduct cannot state a claim for supervisory liability, even when the conduct involves several subordinates." *Id.*

Although the First Amended Complaint provides factual support that officer-on-inmate violence has occurred at Staton, these allegations are insufficient to establish the necessary causal connection between a custom or policy implemented by Warden Headley and Aaron's alleged constitutional deprivation.

First, Aaron alleges "[u]pon information and belief, Headley receives reports regarding violence against prisoners" but has failed to discipline correctional officers for using excessive force. (Doc. 22 at 11.) Yet this allegation is unsupported as Aaron fails to point to any specific incidents where Headley received reports of the use of violence against prisoners yet took no remedial action. *See Ingram*, 30 F.4th at 1254.

While the First Amended Complaint cites five specific incidents where Staton corrections officers used force against inmates prior to Aaron's alleged assault,[2] Aaron does not allege that Headley had any connection to these incidents. Aaron does not, for example, explicitly allege that Headley was the warden at Staton when[3] each of these incidents occurred, that Headley supervised each of the corrections officers involved, or that Headley failed to investigate each of these incidents as required by the written policy. The First Amended Complaint likewise does not allege any of the officers involved in these incidents believed they were permitted to use excessive force with impunity because of Headley's failure to investigate or

---

[2] In addition to the incidents from 2017 and 2018, Aaron alleges that two Staton corrections officers were indicted in March 2021 on criminal assault charges after beating an inmate. It is unclear whether the incident underlying this incident occurred before or after Aaron's alleged assault in March 2019. Construing the factual allegations in Aaron's favor, the Court will assume this incident occurred prior to Aaron's alleged assault for purposes of analyzing whether dismissal is appropriate.

[3] Aaron does allege in his First Amended Complaint that Headley was a warden at Staton "at all times relevant to this lawsuit" but Aaron does not give any factual context to this broad, vague and open-ended assertion, such as whether it is referring to the March 17, 2019 incident involving Aaron or whether this dates back to 2013 when Aaron first raises the issue of the prison conditions at Staton.

discipline prior uses of force against inmates. *Cf. Ingram*, 30 F.4th at 1255–56 (plaintiff's complaint alleged multiple reports of excessive force not investigated by the defendant supervisor from which the court could infer a causal connection between supervisor's lack of policy to address excessive force and officer's belief that excessive force was permitted). And Aaron cannot rely on the incident at issue to show Headley implemented a custom or policy of refraining from reporting uses of force against inmates. *See, e.g., Piazza*, 923 F.3d at 957–58 (explaining the plaintiff could not state a plausible supervisory claim based on the episode giving rise to the complaint).

In fact, if the Court can infer anything from Aaron's factual allegations, it is that the written policy requiring a warden or captain to investigate uses of force generally has been followed. Indeed, of the five incidents detailed in the First Amended Complaint, three were investigated by either a captain or an ADOC internal investigations unit. And further, according to the First Amended Complaint, there have been at least six criminal indictments concerning the use of force, thereby suggesting some level of investigation. And again, on the issue of Headley's involvement, or lack thereof, the First Amended Complaint attributes the failure to discipline the officers to the ADOC, not Headley. (*See* Doc. 22 at 5–6.) Put simply, the First Amended Complaint does not allege "multiple incidents, or multiple reports

9

of prior misconduct," *Piazza*, 923 F.3d at 957, not investigated by Headley—or any other official at Staton for that matter.

Finally, Aaron's factual allegations regarding external investigations of officer-on-inmate violence at Staton and criminal indictments against Staton corrections officers likewise fail to establish a causal connection between Warden Headley and Aaron's alleged deprivation. Again, Aaron does not specifically allege Headley was a warden at Staton when these investigations and indictments occurred or that he received notice of these matters, that corrections officers supervised by Headley were involved, or that these matters concerned incidents of uses of force not investigated or disciplined by Headley. *Cf. D.S. v. Dunn*, No. 20-cv-2012, 2022 WL 1785262, at *3–4, *8 (N.D. Ala. June 1, 2022) (finding the plaintiff plausibly alleged the defendants failed to take sufficient action to correct a knowingly dangerous situation where the complaint contained factual allegations that the defendants received notice of a DOJ investigation and a letter from the EJI regarding prison conditions).

Accordingly, the Court finds that Aaron has failed to plead facts sufficient to establish a plausible claim for supervisory liability against Warden Headley. Thus, Count I of the First Amended Complaint is due to be dismissed.

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED** as follows:

1. The Motion to Dismiss (Doc. 33) filed by Defendant Joseph Headley is **GRANTED**; and

2. The claims against Defendant Headley are **DISMISSED**.

This action will proceed against Defendants Wingrove, Guice, and Hildreth.

DONE, on this the 5th day of October, 2022.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE